UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER TAM and BEVERLY CHIN-TAM, <br><br> Plaintiffs, <br><br> v. <br><br> JUN HAI CHEN <br><br> Defendant | Case No. 1:25-cv-10484-DJC |

**AMENDED COMPLAINT**

### I.     Introduction

1. This is an action by Plaintiffs Peter Tam and Beverly Chin-Tam (collectively, "Plaintiffs," or "the Tams"), a married couple, to recover investments that they were swindled to make on false pretenses by Defendant Jun Hai Chen, a/k/a Li Jun Chen ("Defendant" or "Chen").

2. As detailed in this Complaint, the Plaintiffs invested $400,000 collectively for the benefit of the Defendant, the Defendant has repaid $150,000, and notwithstanding acknowledgement and promises to repay the full amount of $400,000, as evidenced, *inter alia*, by post-dated checks in the full amount owed, as well as text messages acknowledging and promising to repay the same, the remaining $250,000 has not been repaid.

3. This suit seeks this $250,000, in addition to, as called for in certain causes of action set forth herein, an award of reasonable attorneys' fees as well as multiple damages.

### II.     Parties, Jurisdiction and Venue

4. The Plaintiffs, the Tams, are individuals, a married couple domiciled in the Commonwealth of Massachusetts.

5. The Defendant, Chen, is an individual domiciled in the State of California.

6.  Subject-matter jurisdiction is obtained in this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants.

7.  Because the Plaintiffs are citizens of Massachusetts, and the Defendant is a citizen of California, the citizenship of the parties is diverse.

8.  Likewise pursuant to 28 U.S.C. § 1332, the $75,000 amount-in-controversy requirement, exclusive of statutory interest and costs, is met.

9.  This is an action for recovery of $250,000, as detailed in this Complaint, in addition to reasonable attorneys' fees and multiple damages as appropriate.

10. Not including statutory interest, and additional costs that continue to accrue, Defendant may owe the Plaintiffs in excess of $750,000 (which is greater than $75,000), accounting for the possibility of a damages multiplier, as well as statutorily-authorized attorneys' fees. *See Lucas v. Ultima Framingham LLC*, 973 F.Supp.2d 98, 101 (D. Mass. 2013).

11. This Court likewise has personal jurisdiction over the parties.  The Defendant purposefully availed himself of jurisdiction in Massachusetts by seeking a $200,000 loan from individuals residing in Massachusetts, the Plaintiffs, and engaging in multiple communications into Massachusetts as well as frequent in-person meetings with Plaintiff Peter Tam in order to borrow those funds, and further agreed to pay the Plaintiffs an additional $200,000 to buy out a 25% interest in a restaurant located in Brookline, Massachusetts.

12. Venue is obtained in this action in the Eastern Division of the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2), as the Plaintiffs live in Weston, Massachusetts, within the Eastern Division, and lent funds to the Defendant, as well as that the restaurant at issue is located in Brookline, Massachusetts, within the Eastern Division, giving rise to the facts and circumstances of this action, from the Eastern Division.

### III.     Facts

*The Property Loan*

13.     Defendant solicited the Plaintiffs to loan him money that he represented would be used to finance the development of a piece of real property.  On information and belief, that property is currently listed for sale, with a listing price of approximately $2,500,000.

14.     In exchange for Plaintiffs loaning Defendant $200,000, Defendant promised to, within a timeframe of 8-12 months, pay back that sum of $200,000 in principal, in addition to interest in an amount to be determined.  The Defendant signed documentation dated April 4, 2023 to this effect, accordingly.

15.     The recipient of these funds was to be JJ Construction and Design Inc., which is a California corporation.  This corporation was formed by the Defendant in 2013, he is its registered agent, and on information and belief, he is its majority shareholder.  The parties explicitly agreed in writing that this was a "Purchase Loan Carried by Jun Hai Chen."

16.     In accordance with this loan agreement, on or about April 14, 2023, the Plaintiffs caused $200,000 to be wired from the Citizens Bank account in the name of Plaintiff Beverly Chin-Tam, to JJ Construction and Design Inc.

17.     A copy of documentation of the $200,000 wire transfer as reflected in the preceding paragraph (redacted for identifying account numbers) is attached as **Exhibit "A."**

*The Restaurant Investment*

18.     Defendant also solicited the Plaintiffs to invest money for a new restaurant.

19.     This restaurant was to be located in Brookline, Massachusetts.  It came to be known as the Brookline location of "Baby Café," located at 1006 Beacon Street, Brookline, MA.

20. Baby Café is a restaurant concept that was started in California by the wife of the Defendant, whose name is Sherry Chen (Jun Hai Chen's wife). It advertises itself as a restaurant serving classic Hong Kong style Café food.

21. Defendant agreed that in exchange for a $200,000 investment, Plaintiff Peter Tam would receive a 25% equity interest in the Brookline restaurant.

22. On or about September 12, 2022, Baby Café Investment Inc. ("BCII"), a Massachusetts corporation, filed its articles of organization with the Massachusetts Secretary of State office.

23. In accordance with the contemplated investment, Plaintiff Peter Tam was listed as one of three directors of the company in these initial articles of organization.

24. The other two directors were initially listed as (a) the Defendant, Mr. Chen; as well as (b) Xiwen "Sam" Xu. Sam was to receive a 50% equity interest in the company, in exchange for a capital contribution of $400,000, the Defendant was to receive a 25% equity interest, in exchange for a capital contribution of $200,000, and Mr. Tam was to receive a 25% equity interest, in exchange for the Plaintiffs' capital contribution in turn of $200,000.

25. Because the company was in its preliminary stages and had not yet begun operations as of September 2022 when its initial organizational documents were filed, Sam and the Defendant did not require the Plaintiffs to pay their $200,000 at that time.

26. By April 2023, the plans for the restaurant had progressed further, and so in accordance with the contemplated investment, the Plaintiffs caused $200,000 to be paid by check, from the Citizens Bank account in the name of Plaintiff Beverly Chin-Tam, to BCII, as a capital contribution, on or about April 15, 2023.

27.     A copy of this check as reflected in the preceding paragraph (redacted for identifying account numbers) is attached as **Exhibit "B."**

### *Plaintiffs' Suspicions and Defendant's Promises to Repay*

28.     By early 2024, Plaintiffs had started to become highly suspicious of the investments that they had made involving the Defendant.

29.     As to the real estate related loan, despite that Defendant had promised that he would repay the loan as soon as December of 2023, and no later than April of 2024, no progress was being made on repayment.

30.     Throughout 2024, Defendant repeatedly attempted to put off the Plaintiffs by representing that the property was about to sell, which would result in available funds. Defendant was frequently in Massachusetts for business, and he met multiple times with Mr. Tam in person, continuing to make the same promises that repayment was forthcoming. Plaintiff Peter Tam frequently as well reached out to the Defendant to express the Plaintiffs' concerns as to why they had not been repaid.

31.     As to the restaurant, it had not even opened yet as of early 2024. Likewise of serious concern to the Plaintiffs was what Mr. Tam came to learn of his co-owner along with the Defendant, namely Sam. Sam had been criminally indicted on fraud charges. Mr. Tam attended a court hearing in Sam's criminal case in mid-March 2024, and having previously been told that Sam was going to reach a plea deal that would avoid jail time, Mr. Tam instead learned that Sam would be facing a lengthy prison sentence (as to which Sam is still presently incarcerated).

32.     Not in any way wanting to partner in a restaurant with an individual who would soon be situated in a penitentiary, the Plaintiffs wanted out of the investment. The Plaintiffs were

moreover suspicious of why they had not received any stock certificate otherwise reflecting the ownership interest in BCII.  The Defendant was only too happy to oblige a buyout.

33. The reason for the Defendant's interest in buying out the Plaintiffs was because in the interim, in or about April 2024, the Defendant had opened a different location of Baby Café, in Allston, located at 128 Brighton Ave., which the Defendant thought was performing quite well. The Defendant believed that another location of Baby Café, in *Brookline*, would also perform well.

34. Accordingly, in or about June 2024, the Defendant happily offered to buy out the Plaintiffs, which the Plaintiffs accepted.  The Plaintiffs did not need to "twist Chen's arm" to reach this deal.  The arrangement would be that the Defendant would buy out Mr. Tam's 25% interest in BCII, simply for a return of the Plaintiffs' capital contribution in the amount of $200,000.  The Plaintiffs did not even seek a return on this investment in the restaurant.  Just their money back.

35. Around that same time, the Defendant also represented to Mr. Tam that he (the Defendant) would then repay the $200,000 real estate investment as well, which was past due.

36. In late June 2024, Mr. Tam went to dinner with Mr. Chen at the Encore casino in Everett, Massachusetts.  Standing by the car, the Defendant physically handed Mr. Tam two then-post-dated checks (written at the same time, one of which on its face was dated August 1, 2024).

37. A copy of these checks as reflected in the preceding paragraph (redacted for identifying account numbers) is attached as **Exhibit "C."**

38. On their face, both checks were made out from "Jun Hai Chen," located at "28425 Fox Hollow Dr | Hayward, CA  94542," to Beverly Tam.  Both were in the amount of $200,000. Both checks were signed by Mr. Chen as well.

39. The first such check, with check number 1019, is hand-written in the "MEMO" line the following: "Real estate Investment."

6

40. The second such check, with check number 1020, is hand-written in the "MEMO" line the following: "25% Stake of Baby café."

41. In further accordance with the agreement to buy out Peter Tam's equity interest in BCII, on or about August 17, 2024, the company filed a Statement of Change of Supplemental Information with the Secretary of State Office, reflecting that Peter Tam was no longer a director. Now, there were just two officers and directors: (1) "Li Jun Chen" (the Defendant); and (2) "Yong Hao Wu." On information and belief, Mr. Wu is another investor who bought out Sam, who (Sam) was in serious criminal jeopardy by this point in time. In any event, the company was no longer representing in its corporate documents for Mr. Tam to have an interest, as he was bought out.

42. At or about the time that the Plaintiffs were supposed to have been able to cash these two checks into Mrs. Tam's bank account, however, namely August 1, 2024, Mr. Tam as a courtesy reached out to the Defendant to make sure that he would be able to do so. The Defendant responded by telling Mr. Tam that he could *not* actually cash the checks, because there were insufficient funds in the Defendant's account from which the checks had been issued.

43. On information and belief, the Baby Café restaurant in Brookline opened in August of 2024, after the Plaintiffs had already been bought out roughly two months prior. The Defendant, on information and belief, signed the lease for the restaurant.

44. In the latter part of 2024, the Plaintiffs continued to be concerned about the fact that their $400,000 in these two investments had not been repaid as agreed. This was particularly so after they realized that the Defendant had actually provided two checks that he did not have sufficient funds as to allow them to be cashed. Mr. Tam would frequently meet in person with Mr. Chen, in Massachusetts. They would have multiple dinners together. Time and again, the Defendant would make excuses as to when the Plaintiffs would be repaid.

45. Eventually, roughly a week after the date of the post-dated checks, the Defendant began to make payment to the Plaintiffs, but only partial payment.

46. On or about August 9, 2024, the Defendant made a wire transfer in the amount of $100,000 to the Plaintiffs. A copy of the wire transfer confirmation reflecting this payment from the account of "Jun Chen" to the Citizens Bank account of Beverly Chin-Tam (redacted for identifying account numbers) is attached as **Exhibit "D."**

47. In or about early September 2024, after the Defendant had made this initial $100,000 wire transfer, he sent a text message to Plaintiff Peter Tam about his "plan and timeline for the remaining $300k" "balance," which he characterized in that message as "$100k" for the "remainder of" the "house investment," and "200k" for "baby cafe investment 25% share investment." In this text message, the Defendant represented that "[f]inancially I'm struggling to keep everything going," which he blamed on "difficult circumstances and the on going mystery and issues that Sam had created for me." The Defendant then in this text message made a unilateral "propos[al] to [Mr. Tam] that I will take care of your balance within 6 months which i[]s on or before March 1, 2025."

48. Subsequent to this text message, on or about September 16, 2024, the Defendant made a wire transfer in the amount of $50,000 to the Plaintiffs. A copy of the wire transfer confirmation reflecting this payment from the account of "Jun Chen" to the Citizens Bank account of Beverly Chin-Tam (redacted for identifying account numbers) is attached as **Exhibit "E."**

49. After these partial payments, the Defendant continued to make promises to the Plaintiffs the remaining $250,000 in funds would be repaid, including at dinners with Mr. Tam.

50. On September 24, 2024, the Defendant sent another text message to Mr. Tam. The Defendant wrote: "Good morning, Peter, I didn't forget about you! Just finished up filing all my

taxes, I will mail you $25k this coming week, and another 25k in a week or so, I'm still waiting for a few payments to come in to my account that's delayed on my end! And also just let you know the property will be put on the market Nov 1st, so hopefully will sell it and give you all the money back soon!"

51. The Defendant did not subsequently send the Plaintiffs that further $50,000 as promised by early October 2024—nor at any time. Accordingly, in or about late October of 2024, Mr. Tam sent a text message to the Defendant, writing: "Hi John, haven't received the check yet, please get back to me."

52. On October 28, 2024, the Defendant replied to this text message from Mr. Tam, as follows: "Good morning Peter, check is not mailed out yet! I'm struggling on cash flow lately, too much payments needs to be paid, and plus business are no good here in boston, too much headache, I'm going to see my status in a few weeks if it gets better then I will send you something! Otherwise the best way to get you the money is when the property sells since it's going to be on the market soon! Have a great day!"

53. Collectively to date, the Defendant has only repaid $150,000 to the Plaintiffs, with $250,000 still outstanding, despite his serial continued promises since the date of the last (September 16, 2024) payment to do so.

54. Baby Café is still in operation, both in Allston as well as Brookline.

### IV. Causes of Action

### COUNT I
### (Violation of Massachusetts Uniform Securities Act – G.L. c. 110A, § 410)

55. Plaintiffs re-allege and incorporate by reference the allegations contained in all above Paragraphs of the Complaint as if fully set forth herein.

9

56. Under G.L. c. 110A, § 410(a)(2), any person who "offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading," is liable to the purchaser of the security.

57. Under G.L. c. 110A, § 401(k), a "security" is broadly defined to include "any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement . . . investment contract . . . or, in general . . . any . . . receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

58. The Defendant offered to sell, and sold to the Plaintiffs in Massachusetts, indebtedness by which he promised to pay the Plaintiffs a return of the principal, in addition to interest.

59. On information and belief, Defendant accepted this loan from Plaintiffs without any intention to fully repay the principal to Plaintiffs, let alone the agreed-upon interest.

60. Furthermore, on information and belief, Defendant accepted this loan from Plaintiffs with knowledge that he did not disclose as to the status of development of the associated property that it would not be completed to be sold within the one-year maximum period that Defendant directly represented to Plaintiffs during which the loan would be repaid.

61. G.L. c. 110A, § 410(a)(2) provides as a remedy for its violation "the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security . . . ."

62. Plaintiffs are and have been ready, able and willing to tender Defendant's indebtedness to them in exchange for the funds lent that have not been repaid.

63. Plaintiffs did not know, and could not reasonably have known, that Defendant had no intention to repay them the amounts owed.

64. Plaintiffs also did not know, and could not reasonably have known, Defendant's inability to complete the real estate development in a timeframe that would allow Plaintiffs to be repaid from anticipated proceeds of that property sale during the 8-12 month period following the investment, as Defendant had promised. Defendant kept that information from Plaintiffs, and conversely, he misrepresented to the Plaintiffs that the property would be sold and the funds repaid within that 8-12 month period.

65. Plaintiffs therefore seek recission of their loan investment, and they agree to tender Defendant's indebtedness to them before entry of judgment.

## COUNT II
### (Violation of G.L. c. 93A, § 11)

66. Plaintiffs re-allege and incorporate by reference the allegations contained in all above Paragraphs of the Complaint as if fully set forth herein.

67. G.L. c. 93A, § 1 defines "trade" or "commerce" to "include any trade or commerce directly or indirectly affecting the people of this commonwealth," which further includes, but is not limited to, "the offering for sale, rent or lease, the sale, rent, lease or distribution of . . . any security as defined in [G.L. c. 110A, § 401(k)]."

68. At all times relevant to the allegations of this Complaint, the parties were engaged in trade or commerce within the meaning of G.L. c. 93A, § 11, as Plaintiffs (a) lent Defendant $200,000; and furthermore (b) entered into an agreement with Defendant to be paid $200,000 to buy out their partial ownership interest in a restaurant.

69. Conduct that is immoral, unethical, oppressive, or unscrupulous constitutes an unfair act or practice for the purposes of G.L. c. 93A, § 11. More specifically, a party's actions to "string along" a counterparty to a business transaction are considered unfair for these purposes.

70. Additionally, conduct that is fraudulent or deceptive likewise constitutes a violation of G.L. c. 93A, § 11.

71. Defendant has strung Plaintiffs along, securing a loan of $200,000 and a partial ownership interest in a restaurant for which Plaintiffs were entitled to be paid $200,000, with frequent promises to pay Plaintiffs the full amount of $400,000 owed, but not actually doing so. Defendant has gone so far as to provide Plaintiffs with two post-dated checks in the total amount of $400,000, which were unable to be cashed, to keep the ruse going.

72. Instead, Defendant has only repaid Plaintiffs $150,000, not the total of $400,000.

73. Defendant has also made numerous false statements to Plaintiffs that they would be repaid in full imminently, but not actually doing so.

74. The conduct of Defendant was on information and belief knowing and willful. He has always known the extent of his own resources available—or not—to pay the Plaintiffs at the times that he has made his serial promises to them.

75. Plaintiffs have been harmed by the loss of all funds that have not been repaid to them, in addition to their attorneys' fees as well as available multiple damages.

76. This conduct took place primarily and substantially in Massachusetts, as (a) Plaintiffs lent Defendant the funds from Massachusetts; (b) the restaurant is located in Brookline, Massachusetts, as to which Defendant agreed to buy out the Plaintiffs' stake; and (c) Defendant made frequent false promises to Mr. Tam through in-person meetings in Massachusetts.

## COUNT III
### (Account Stated)

77.     Plaintiffs re-allege and incorporate by reference the allegations contained in all above Paragraphs of the Complaint as if fully set forth herein.

78.     The transactions between the Plaintiffs and the Defendant are of a monetary character, creating the relationship of creditor and debtor.

79.     Defendant has acknowledged his liability to Plaintiffs for the amounts owed.

80.     More specifically, Defendant provided Plaintiffs post-dated checks that were unable to be cashed, in the full amount then owed of $400,000, representing to them that these checks would constitute repayment of all sums owed.  This is an acknowledgement that $400,000 was owed.  Defendant then proceeded to only wire a total of $150,000 to Plaintiffs, leaving an amount of $250,000 still acknowledged to be owed.

81.     Additionally, Defendant has, in text messages that he sent to Plaintiff Peter Tam, expressly acknowledged that he had a total obligation to the Plaintiffs in the amount of $400,000. In or about early September of 2024, prior to a subsequent wire transfer in the amount of $50,000 that he came to make on September 16, 2024, the Defendant himself represented that there was a "remaining $300k" "balance" that he owed to the Plaintiffs, which he allocated as "$100k" for the "remainder" of the "house investment," and "$200k" for "baby cafe investment 25% share investment."  Once $50,000 was paid on September 16, 2024, he then owed $250,000 on his *own* accounting, as stated to the Plaintiffs.

82.     As a new and independent cause of action from any contractual obligations, Plaintiffs are entitled to recover from Defendant's express, and implied, promise to pay his obligations to Plaintiffs, and Plaintiffs are not required to set forth or prove the separate items of liability from which the balance results.

## COUNT IV
### (Breach of Contract)

83. Plaintiffs re-allege and incorporate by reference the allegations contained in all above Paragraphs of the Complaint as if fully set forth herein.

84. Plaintiffs' loan of $200,000 to Defendant, in addition to Defendant's promise to pay Plaintiffs $200,000 in exchange for the partial ownership interest in the restaurant, are enforceable contracts between the parties.

85. Plaintiffs were and have been ready, able and willing to perform under these contracts. They made the loan of $200,000 to Defendant, and they tendered the partial ownership interest in the restaurant to Defendant in exchange for the promise to pay them $200,000 for it.

86. Defendant has breached his contractual obligations and has failed to pay Plaintiffs an amount, at a minimum, of $250,000 still owed collectively as to these obligations, which Plaintiffs have suffered as damages to them.

## COUNT V
### (Conversion)

87. Plaintiffs re-allege and incorporate by reference the allegations contained in all above Paragraphs of the Complaint as if fully set forth herein.

88. Defendant has stolen at least $250,000 from Plaintiffs by failing to repay those funds, to which he has no legal right, to Plaintiffs upon their continued demand.

89. To wit, Defendant has converted $250,000 in these investment funds that he has been obligated to repay to the Plaintiffs. Defendant has known that this money belongs to the Plaintiffs, and that he has no legal privilege to retain it.

90. These $250,000 in funds are a specific and identifiable lot of money, more specifically, the remainder of the $400,000 paid by Plaintiffs to Defendant, subtracting the $150,000 lesser amount that Defendant repaid to Plaintiffs.

91. Accordingly, Defendant has exercised ownership or control over money that belongs to Plaintiffs, and he has done so in a manner that is inconsistent with Plaintiffs' rights.

92. Defendant has retained this money purposefully.

93. Defendant has no right to possess or control this money.

94. Plaintiffs have suffered the loss of this money, unless it is returned to them.

## COUNT VI
### (Money Had and Received)

95. Plaintiffs re-allege and incorporate by reference the allegations contained in all above Paragraphs of the Complaint as if fully set forth herein.

96. Because of the conduct described in this Complaint, Defendant wrongfully possesses money, at least $250,000, that is properly the property of Plaintiffs, without legitimate legal privilege to do so.

97. Plaintiffs have conferred a benefit on the Defendant by providing him $400,000 in funds, and equity does not permit the Defendant to continue to possess the $250,000 in funds that remain after his partial repayment of $150,000.

98. At least $250,000 in funds should be returned by Defendant to Plaintiffs.

## COUNT VII
### (Fraud in the Inducement)

99. Plaintiffs re-allege and incorporate by reference the allegations contained in all above Paragraphs of the Complaint as if fully set forth herein.

15

100. Defendant secured a $200,000 loan from Plaintiffs, as well as a partial ownership interest in a restaurant in exchange for a promise to pay $200,000, based on contemporaneous representations by Defendant to Plaintiffs that those sums would be paid.

101. On information and belief, when Defendant made those commitments, he never had any intention of fully honoring them. These representations to pay were false.

102. Indeed, more recently, this is evidenced by the fact that Defendant has strung Plaintiff along, providing them with post-dated checks in the full amount of $400,000 that, colloquially, would have "bounced" for lack of sufficient funds in the Defendant's account if Plaintiffs had attempted to cash them, as well as making multiple serial false promises that the sums still owed would be paid forthwith, in person and through text messages and phone calls.

103. When Defendant made these representations to Plaintiffs, he intended that Plaintiffs would rely on them as an inducement to enter into these transactions.

104. Plaintiffs did in fact reasonably rely on these representations, as a material inducement to their loaning Defendant $200,000, as well as agreeing to be bought out of their partial ownership interest in the restaurant for a promised payment of $200,000.

105. Defendant represented that he would have the funds both to repay the $200,000 loan, as well as make the $200,000 payment for the restaurant interest. He provided post-dated checks in an attempt to confirm this representation.

106. As to this Count, Plaintiffs have been harmed by the amount of at least $250,000 still owed to them.

## V. **Prayers for Relief**

Based upon these causes of action, the Plaintiffs, Peter Tam and Beverly Chin-Tam, request that this Court enter judgment in their favor on all Counts and grant the following relief against Defendant Jun Hai Chen:

1. As to all Counts, enter judgment ordering Defendant to pay to the Plaintiffs damages in the amount determined at trial, as well as statutory interest, and award Plaintiffs their costs of suit.

2. As to Counts I and II, enter judgment further ordering Defendant to pay to the Plaintiffs the reasonable counsel fees of Plaintiffs, in addition to any other available remedies.

3. As to Count II, enter judgment further ordering Defendant to pay to the Plaintiffs an award of multiple damages, in the amount to be determined as double or treble damages, in addition to any other available remedies.

4. As to all Counts, grant such other and further relief as may be just and proper.

Dated: March 13, 2025

Respectfully submitted,

PLAINTIFFS
PETER TAM and BEVERLY CHIN-TAM
By their attorney,

 */s/ Matthew A. Gens*
Matthew A. Gens, Esq. (BBO No. 675393)
BERLUTI McLAUGHLIN & KUTCHIN LLP
44 School Street, 9th Floor
Boston, MA 02108
Phone: 617-557-3030
Fax: 617-557-2939
mgens@bmklegal.com

## **CERTIFICATE OF SERVICE**

I, Matthew A. Gens, hereby certify that on March 13, 2025, a true and correct copy of this document filed through the ECF system has been sent by USPS Priority Mail to the Defendant, at his residential address, as follows:

>Jun Hai Chen
>28425 Fox Hollow Dr.
>Hayward, CA  94542

>>*/s/ Matthew A. Gens*
>>Matthew A. Gens